

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**CZIGANY BECK, individually and on behalf of others similarly situated,**

Plaintiff,

- against -

**MANHATTAN COLLEGE,**

Defendant.

20 Civ. 3229 (LLS)

**OPINION & ORDER**

Defendant Manhattan College moves to dismiss plaintiff Czigany Beck's first amended complaint ("FAC")(Dkt. No. 21) under Federal Rule of Civil Procedure 12(c).

For the following reasons, the motion (Dkt. No. 27) is granted in part, dismissing Beck's breach of contract, conversion, and consumer protection claims, and her unjust enrichment claim for a fee refund, and denied as to her unjust enrichment claim for a tuition refund.

## BACKGROUND[1]

Czigany Beck enrolled at, and paid tuition and fees to, Manhattan College for the Spring 2020 academic semester. The semester began with the first day of classes on or about January 14, 2020 and was scheduled to conclude in mid-May.

When the COVID-19 pandemic reached New York in March of 2020, the College moved all classes online, cancelled all on-

---

[1] On a motion for judgment on the pleadings, the Court may consider facts from the FAC, the Answer, and the exhibits thereto. L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011).

campus events, closed most campus facilities, and required most students living on campus to vacate the residence halls.

Ms. Beck brought this putative class action claiming that the College breached its contractual obligation to provide students with in-person instruction and access to on-campus activities, services, and facilities in exchange for tuition and fees.² She seeks a pro rata refund for the difference in fair market value between what the students contracted for and what they received. She also brings claims for unjust enrichment, conversion, and violation of Sections 349 and 350 of the New York General Business Law, which bar deceptive trade practices and false advertising.

## DISCUSSION

### Breach of Contract

Ms. Beck alleges two distinct breach of contract claims. Both allege that the College breached its promise to provide in-person instruction and access to campus facilities and services

---

² Students have brought similar claim against many universities, and this opinion relies in large part on opinions resolving motions to dismiss those claims. See, e.g., Ford v. Rensselaer Polytech. Inst., No. 1:20-CV-470, 2020 WL 7389155 (N.D.N.Y. Dec. 16, 2020); Bergeron v. Rochester Inst. of Tech., No. 20-CV-6283, 2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020); Hassan v. Fordham Univ., No. 20-CV-3265, 2021 WL 293255 (S.D.N.Y. Jan. 28, 2021), amended in part, 2021 WL 1263136 (Apr. 6, 2021); In re Columbia Tuition Refund Action, No. 20-CV-3208, 2021 WL 790638 (S.D.N.Y. Feb. 26, 2021); Espejo v. Cornell Univ., No. 3:20-CV-467, 2021 WL 810159 (N.D.N.Y. Mar. 3, 2021); Zagoria v. N.Y. Univ., 20-CV-3610, 2021 WL 1026511 (S.D.N.Y. Mar. 17, 2021); Botts v. Johns Hopkins Univ, No. CV ELH-20-1335, 2021 WL 1561520, at *20 (D. Md. Apr. 21, 2021); Goldberg v. Pace Univ., No. 20-CV-3665, 2021 WL 1565352 (S.D.N.Y. Apr. 21, 2021).

by moving classes online and suspending or vastly reducing access to those campus facilities and services. They differ in that one claim alleges that the College made those promises in exchange for tuition, while the other alleges that the College made those promises in exchange for fees.

"Under New York law, an implied contract is formed when a university accepts a student for enrollment." Papelino v. Albany Coll. of Pharmacy of Union Univ., 633 F.3d 81, 93 (2d Cir. 2011) (citing Carr v. St. John's Univ., 17 A.D.2d 632, 633, 231 N.Y.S.2d 410 (2d Dep't), aff'd, 12 N.Y.2d 802, 187 N.E.2d 18 (1962)). "The rights and obligations of the parties as contained in the university's bulletins, circulars and regulations made available to the student, become a part of this contract." Vought v. Teachers Coll., Columbia Univ., 127 A.D.2d 654, 654, 511 N.Y.S.2d 880, 881 (2d Dep't 1987). "To state a claim for breach of this implied contract, 'a student must identify specifically designated and discrete promises.'" Goldberg, 2021 WL 1565352, at *7 (quoting Nungesser v. Columbia Univ., 169 F. Supp. 3d 353, 370 (S.D.N.Y 2016)).

### The Tuition Claim

The FAC recites statements from the College's website to support Ms. Beck's contention that the College promised in-person classes and access to specific on-campus facilities and services. See FAC ¶¶ 22 (advertising the College's campus and

its New York City location), 64 (stating that the College offers "a catalog of courses that use New York City as a classroom"), 69 ("At Manhattan, you will have the chance to make learning come alive through a variety of immersive, hands-on experiences in New York City and beyond."), 70 ("Our beautiful campus offers a serene escape from city life with easy access to the culture and opportunities of midtown Manhattan.").

These statements are not specific enough to promise in-person classes or access to specific on-campus facilities or services. They merely advertise and describe the experience of studying and living on the College's New York City campus.

The rest of the website excerpts in the FAC fare no better. For instance, ¶ 68 includes the statement "We offer more than 100 majors, minors, graduate programs and advanced certificates, as well as degrees that can be earned fully online or combined with a traditional classroom experience." That sentence promotes the variety of courses and programs the College offers, including "traditional" (i.e. in-person) classes; it does not promise in-person instruction. ¶ 71 advertises some of the activities available for those who live on campus -- "from spending sunny afternoons studying on the Quad with your roommates, to grabbing a late-night bite to eat in Locke's Loft after a basketball game." It does not promise access to those activities. And ¶ 72 recites statistics the College uses in its

marketing, including that "75% of freshman live on campus." Not only does that not promise students on-campus residence, but Ms. Beck does not allege that she lived on campus before the Covid-related closures.

Ms. Beck similarly cannot derive an implied promise to hold in-person classes -- whether from general educational customs, course attendance requirements, the College offering Ms. Beck's classes in person before March 2020, or the College's 30% discount of tuition for its online summer 2020 session -- as none of these circumstances amount to a written promise to provide specified services. See In re Columbia, 2021 WL 790638, at *4 (citing Ford, 2020 WL 7389155, at *4)(finding that neither "the fact that Columbia provided in-person instruction in Plaintiffs' courses before March 2020" nor "the references to classroom locations and physical attendance requirements in Columbia's syllabi, departmental policies and handbooks, and course registration portal" imply a contractual entitlement to in-person classes); Hassan, 2021 WL 293255, at *5 (quoting Gertler v. Goodgold, 107 A.D.2d 481, 485, 487 N.Y.S.2d 565, 568 (1st Dep't), aff'd, 66 N.Y.2d 946, 489 N.E.2d 748 (1985))("In addition, a university's 'academic and administrative prerogatives' are not 'impliedly limited by custom, or by a strained theory of contractual construction.'").

Ms. Beck contends that the law of contracts is not so demanding:

> Defendant argues that Plaintiff cannot prevail because she "cannot identify any specific promise of on-campus instruction (even in the face of a pandemic and state- mandated shutdown)." Def. Mem. [ECF 28] at pg. 6. However, the law with respect to contract formation does not require this absurd level of specificity.

Pl.'s Opp'n at 7.

But a promise must be written and specific for that promise to be enforced as a term of the implied educational contract between student and university. See Ford, 2020 WL 7389155, at *4 (requiring that "breach of contract actions between a student and a school must be grounded in a text"); In re Columbia, 2021 WL 790638, at *3 (alterations in original)("In general, to sustain a contract claim against a university, a student must point to a provision that guarantees 'certain specified services,' Baldridge v. State, 293 A.D.2d 941, 740 N.Y.S.2d 723, 725 (3d Dep't 2002)(quoting Paladino v. Adelphi Univ., 89 A.D.2d 85, 454 N.Y.S.2d 868, 873 (2d Dep't 1982)), not merely to a '[g]eneral statement[ ] of policy,' Keefe, 2009 WL 3858679, at *1, or to statements of 'opinion or puffery,' Bader v. Siegel, 238 A.D.2d 272, 657 N.Y.S.2d 28, 29 (1st Dep't 1997).").

Ms. Beck's claim that the College breached a contractual agreement to provide in-person instruction and access to campus facilities and services in exchange for tuition thus fails.

## The Fees Claim

The FAC identifies only one specific fee, the Comprehensive Fee, which it claims "According to Defendant, the Comprehensive Fee charged is charged in order to cover the costs of things such as access to the Campus Health Center, student activities and services, athletics, etc." FAC ¶ 126. The College attaches to its Answer the "Fees Glossary" section of the "Tuition & Fees" page of its website, which describes the Comprehensive Fee as follows:

> Full-time students are now assessed a Comprehensive Fee that includes a number of college services. The mandatory Comprehensive Fee is a per-semester fee. This general student fee replaces many of the separate charges previously billed (i.e., student engagement fee, health center fee, information services fee, etc.) and is nonrefundable.

Answer Ex. B at 3-4.

The breach of contract claim regarding fee payments is dismissed.

## Unjust Enrichment

Ms. Beck claims that the College was unjustly enriched at the students' expense when it moved to online instruction and closed on-campus services and facilities without refunding students a portion of their tuition and fees.

The College first contends that "Plaintiff's unjust enrichment claim must be dismissed because it is nothing more

-7-

than a restatement of her breach of contract claims." Def.'s Mem. at 16.

Where an unjust enrichment claim duplicates a claim for breach of a valid, enforceable contractual obligation, the unjust enrichment claim must be dismissed.

> However, if the subject-matter of an unjust enrichment claim "is not covered by a valid, enforceable contractual obligation," that claim is not duplicative and need not be dismissed based solely on the existence of a breach of contract claim. See, e.g., Spirit Locker, Inc. v. EVO Direct, LLC, 696 F. Supp. 2d 296, 305 (E.D.N.Y. 2010)(declining to dismiss unjust enrichment claim where contract did not cover subject of unjust enrichment claim).

Ford, 2020 WL 7389155, at *4.

Ms. Beck's unjust enrichment claim for a tuition refund of the difference in value between in-person and online instruction is not covered by a valid, enforceable contractual obligation and is thus not duplicative of her failed breach of contract claim.

The College then contends that "Nothing in equity or good conscience requires a refund of tuition or fees." Def.'s Mem. at 17. They argue that

> MANHATTAN COLLEGE's actions were not taken on a whim; rather they were taken to protect the health of its students, faculty and staff during the pandemic, and as required by orders of New York State. Moreover, Plaintiff does not allege that MANHATTAN COLLEGE's faculty failed to provide her with the instruction in her courses during the balance of the Spring Term. Nor does she allege that MANHATTAN COLLEGE did not pay its faculty members for providing that instruction. MANHATTAN COLLEGE did not pocket a pile of money when

> it was forced to close the campus. It continued to pay
> its faculty members and incur the usual expenses of
> operating an educational institution, plus additional
> expenses to address the pandemic. MANHATTAN COLLEGE
> provided education and it continued other vital
> services albeit often through remote means. See
> Answer, ¶30, Exhibit C. Plaintiff chose to continue at
> MANHATTAN COLLEGE after the announcement of the move
> to online instruction, and she earned credits.

Id. at 16-17.

Ms. Beck alleges, however, that the College had decreased operating costs and increased government funding to support the shift to online instruction:

> As a result of the closure of campus, Defendant saved
> significant sums of money in the way of reduced
> utility costs, reduced maintenance and staffing
> requirements, reduced or eliminated hours for hourly
> employees, etc. ¶¶ 112, 142. At the same time,
> Defendant received a significant bailout from the
> Federal Government under the CARES Act, of which
> Defendant retained $1.63 million for itself as opposed
> to passing those funds along to students. ¶¶ 116, 146.
> All the while, Defendant is supported by a multi-
> million dollar endowment while its students incur debt
> to pay the very fees and tuition Defendant seeks to
> retain. This is a textbook example of an unjust and
> inequitable arrangement and Plaintiff's claims for
> unjust enrichment should not be dismissed.

Pl.'s Opp'n at 20.

The Court does not blame Manhattan College for closing its facilities and in-person classes when faced with a deadly pandemic. But the doctrine of unjust enrichment does not require such blame.

> It is available only in unusual situations when,
> though the defendant has not breached a contract nor
> committed a recognized tort, circumstances create an
> equitable obligation running from the defendant to the
> plaintiff. Typical cases are those in which the

defendant, though guilty of no wrongdoing, has
received money to which he or she is not entitled.

Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 790, 967
N.E.2d 1177, 1185 (2012).

Ms. Beck has plausibly pled that the College was not
entitled to retain her entire tuition payment after shifting
instruction online, closing facilities, and receiving CARES Act
funding. The College's motion to dismiss that claim fails
accordingly.

Ms. Beck's unjust enrichment claim regarding her fee
payment is a different story. That claim is governed by a valid,
enforceable provision of the parties' agreement -- the bar on
refunds of the Comprehensive Fee -- and is thus dismissed.

## Conversion

Ms. Beck argues that the College converted students'
tuition and fees by failing to provide students the in-person
instruction, services, and facility access for which they paid.

"An action for conversion of money may be made out 'where
there is a specific, identifiable fund and an obligation to
return or otherwise treat in a particular manner the specific
fund in question.'" Thys v. Fortis Securities LLC, 74 A.D.3d
546, 547, 903 N.Y.S.2d 368, 369 (1st Dep't 2010)(quoting
Manufacturers Hanover Trust Co. v. Chemical Bank, 160 A.D.2d
113, 124, 559 N.Y.S.2d 704, 712 (1st Dep't 1990)).

The partial refunds Ms. Beck seeks are not specific,

-10-

identifiable funds -- they are undetermined amounts of money representing the portion of the unliquidated, unearned benefit the College obtained from the absence of student-related expenses which should be distributed to the class. See Hassan, 2021 WL 293255, at *11 (quoting Ford, 2020 WL 7389155, at *9)("Unlike in Thys, however, Plaintiff cannot identify a comparably 'specific, identifiable' fund and 'cannot realistically argue that once that money was paid to defendant it remained intact, as opposed to pooling in with defendant's other funding.'").

The FAC thus fails to state a claim for conversion.

### Consumer Protection

Ms. Beck also alleges that the College violated Sections 349 and 350 of the New York General Business Law. "To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015)(quoting Koch v. Acker, Merrall & Condit Co., 18 N.Y.3d 940, 944 N.Y.S.2d 452, 452, 967 N.E.2d 675 (2012)). "An act is deceptive within the meaning of the New York statute only if it is likely to mislead a reasonable consumer." Marcus v. AT&T Corp., 138 F.3d 46, 64 (2d Cir. 1998).

Ms. Beck contends that the College materially misled students by advertising "its in-person, on campus product" and changing course once Covid-19 hit. See Pl.'s Opp'n at 23. She also argues that determining whether the College made material misrepresentations requires a reasonableness analysis that must be left to a jury.

However, no reasonable consumer would read the College's marketing materials to mean that the College would continue offering in-person instruction and campus access in the face of a deadly pandemic. See Bergeron, 2020 WL 7486682, at *11 (same as to RIT); Botts, 2021 WL 1561520, at *20 (same as to Johns Hopkins); Espejo, 2021 WL 810159, at *9 (same as to Cornell); Ford, 2020 WL 7389155, at *10 (same as to RPI).

Ms. Beck's N.Y. G.B.L. §§ 349 and 350 claims are thus dismissed.

**CONCLUSION**

The other causes of action being dismissed, the case will proceed on the remaining claim for unjust enrichment.

So ordered.

Dated:   New York, New York
         May 7, 2021

*Louis L. Stanton*
LOUIS L. STANTON
U.S.D.J.